1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RISING TIDE I, LLC, et al.,

          Plaintiffs,

    v.

MICHAEL FITZSIMMONS, et al.,

          Defendants.

Case No. 17-cv-01232-TSH

**DISCOVERY ORDER**

Re: Dkt. Nos. 134, 136

      In ECF No. 129, the Court ordered Latham & Watkins – Delivery Agent's former counsel – to produce documents responsive to Defendants' subpoenas in this and the related action *Abdo v. Fitzsimmons*, No. 17-851. The Court found that there was a presumption that the attorney-client privilege held by Delivery Agent was no longer viable given that the company had ceased to function. Delivery Agent's Trustee had indicated that he did not intend to waive any applicable privilege but failed to provide a basis to believe a privilege existed.

      That order largely resolves the current discovery letter briefs concerning similar subpoenas Plaintiffs have served on Bergeson and Orrick, Herrington & Sutcliffe. *See* ECF Nos. 134, 136. However, Bergeson and Orrick have some additional arguments as well. Bergeson contests the relevance of its communications with Delivery Agent. Bergeson argues that while Defendants are clearly relying on Latham's legal advice for their advice of counsel defense, it's not quite clear that they are relying on Bergeson's advice. However, that argument is flawed. Once Defendants invoke the advice of counsel defense, Plaintiffs are entitled to know all of the advice Defendants received on those subjects, not just the advice relied on. For example, if attorney A says "this plan is a great idea – do it," but attorney B says "no, don't do it – that's illegal," of course the defendant will say he relied on only attorney A's advice, but the advice of both attorneys is relevant to

determining the merit of the defense. The Court understands that the scope of Bergeson's engagement was not coterminous with Latham's, but the subject matters the two firms were engaged on overlap, making Bergeson's advice relevant.

The Court's prior order found that the continued existence of the attorney-client privilege had not been established in light of Delivery Agent's end as a business, and Bergeson submits nothing additional to change that conclusion. Bergeson observes that Hillair acquired substantially all of Delivery Agent's assets in the bankruptcy and later transferred them to Connekt, and these assets included computers that had Delivery Agent's documents on them. From this Bergeson argues that maybe Hillair or Connekt hold a privilege. However, as the Court previously explained, the holder of the alleged privilege has the burden of demonstrating its existence. The Court has seen nothing to indicate that Hillair contends it holds a privilege in Delivery Agent's attorney-client communications, and Hillair's wholesale transfer of the Delivery Agent assets to Connekt is inconsistent with such a position. Likewise, the Court has seen nothing to indicate that Connekt thinks it has a privilege, and indeed the company's voluntary production to Defendants of all of the Delivery Agent documents it received in the asset sale does not tend to demonstrate the current existence of a privilege. Bergeson argues that Defendants themselves claimed to be holders of the privilege. However, Defendants made that assertion only in support of their motion to compel Latham and Watkins, reasoning that if they hold the privilege, they can and have waived it, and thus Latham should be forced to produce attorney-client communications. None of these arguments provide a basis to conclude that a privilege continues to exist and is held by someone who hasn't waived it.

With respect to attorney work product, the Court follows *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), even though this not a patent case. *See United States v. Hussain*, 2018 WL 1091083, at *3 (N.D. Cal. Feb. 28, 2018) (also following *EchoStar* outside the patent context). *EchoStar* recognized at least three categories of work product that are potentially relevant to an advice of counsel defense: "(1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's

mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." 448 F.3d at 1302. The Court held the first category was discoverable and the second category was not. The Court held the third category was discoverable except that it may contain information in the second category that may need to be redacted. This Court adopts that same analysis here.[1]

Bergeson says the subpoena is unnecessarily burdensome because it "believes many of the documents requested are in the possession of the parties or other third parties from whom Plaintiffs have taken discovery." But "believes" and "many" make that argument difficult to do anything with. Bergeson is not claiming that all responsive documents are in the parties' possession or have already been produced to Plaintiffs, nor is it saying it knows which ones they already have. The argument that Bergeson's document production will probably overlap to some unknown extent with documents Plaintiffs already have is not a good reason not to respond to the subpoena.

Bergeson also argues that request for production ("RFP") No. 3 – which seeks time sheets, invoices and bills – seeks information that is irrelevant to the advice of counsel defense. Plaintiffs disagree, arguing that these documents are likely to identify when communications with Delivery Agent occurred, in particular oral communications in calls or meetings that are otherwise undocumented. For example, if Defendants testify that a meeting occurred on a particular day with a particular attorney, but his or her time sheets and the firm's invoices do not reflect that such a meeting took place, that could undermine that testimony. The Court agrees that RFP No. 3 seeks relevant and proportional information.

---

[1] Some federal courts have adopted the "entire file" approach to the waiver of work product immunity – meaning that even opinion work product must be produced – in cases where the client's and the attorney's interests have diverged. *See S.E.C. v. McNaul*, 271 F.R.D. 661, 666-67 (D. Kan. 2010). The classic example is a legal malpractice action, where uncommunicated opinion work product could be highly relevant. The Court agrees with *EchoStar*, however, that when the waiver of work product immunity is implied as a matter of law from the assertion of an advice of counsel defense, it doesn't make sense to extend the waiver to uncommunicated opinion work product because by definition it couldn't have informed the client's actions. *See* 448 F.3d at 1304.

With respect to third party confidentiality concerns, the protective order in this action is sufficient protection. Finally, the subpoena does not implicate the automatic stay in the Bankruptcy Code, and cost shifting is unwarranted here. Accordingly, the Court **GRANTS** the motion to compel against Bergeson except as noted above with respect to uncommunicated opinion work product.

With respect to Orrick, the Court agrees with Plaintiffs that the firm's legal advice to Defendants is relevant. Even though Orrick was retained after Plaintiffs received the draft 304 response, the advice Orrick provided bears on the reasonableness of the legal advice Defendants received previously, as well as on the factual question of what they relied on. Orrick's communications with Defendants may show if they received contradictory legal advice from different counsel and may indicate the extent to which they relied on legal advice on the subject matter at issue. An advice of counsel defense does not narrowly implicate only the specific advice that was relied on; it implicates all the advice that was received on that subject matter, in part to test the reasonableness or fact of the reliance.

The Court understands that when a corporation is in bankruptcy, control of the corporation's attorney-client privilege is vested in the trustee. The Court's prior order at ECF No. 129 addressed a different issue, namely the line of case law holding that when a corporation has ceased to function there is a presumption that the attorney-client privilege is no longer viable. Delivery Agent has ceased to function, and Orrick offers nothing to establish the existence of the privilege. As before, the Trustee's statement that he is not waiving any privilege he may have does not establish the existence of the privilege. Finally, as discussed above, the Court agrees with Orrick that never-communicated opinion work product is not discoverable under *EchoStar*.

Accordingly, with the exception of uncommunicated opinion work product, the motion to compel Orrick to produce documents responsive to Plaintiffs' subpoena is **GRANTED**.

**IT IS SO ORDERED.**

Dated: November 22, 2019

THOMAS S. HIXSON
United States Magistrate Judge