# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. ABDO, as Trustee of the JOHN E. ABDO TRUST DATED JUNE 11, 2014 et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MICHAEL FITZSIMMONS, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-00851-TSH |
| RISING TIDE I, LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MICHAEL FITZSIMMONS, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-01232-TSH |

**EXPERT REPORT OF DENNIS CHOOKASZIAN**
**May 28, 2020**

## I. INTRODUCTION

1. I submitted my opening report dated May 5, 2020 (the "Chookaszian Opening Report"). On May 5, 2020, Plaintiffs submitted the Expert Witness Report of Steven M. Berwick, CPA, CVA, CITP, CFF (the "Berwick Report"). In that report, Mr. Berwick opines that "from June 2104 [*sic*] through April 2016, the equity value of [Delivery Agent] was at all times less than zero" and "the securities purchased by Plaintiffs between June 18, 2014 and April 20, 2016 were worthless on the dates of purchase."[1] The premise of Mr. Berwick's valuation opinion is based upon, among other items: (1) the Company's[2] lack of profitability; and (2) the Company's auditors issuing "going concern" opinions for the years ending in 2011, 2012, 2013, 2014, and 2015 (the "Going Concern Opinions").[3]

## II. ASSIGNMENT AND SUMMARY OF OPINIONS

2. I have been retained by Seyfarth Shaw LLP, counsel for the Defendants, to review and respond to certain conclusions made in the Berwick Report, including those premised upon the Company's lack of profitability and the Going Concern Opinions.[4] I have also reached various conclusions about the importance of audit opinions to investment decisions and the impact of certain opinions on the nature of due diligence performed. An updated list of the materials I have relied upon in the Chookaszian Opening Report and this rebuttal report are attached as **Exhibit 1**.

---

[1] Berwick Report, ¶ 16.

[2] All capitalized terms shall be given the meaning set forth in the Chookaszian Opening Report, unless otherwise defined herein.

[3] Berwick Report, ¶¶ 21 and 28-30.

[4] I have not been asked to opine upon the accuracy of the valuation in the Berwick Report. Instead, I opine solely on the factors relied upon by Mr. Berwick in reaching his valuation and any potential impact on Plaintiffs' investment decisions.

3. Based upon my review of the relevant documents, my experience as an investor in numerous non-public companies, and a finance academic, as well as my experience on the boards of various private companies, I have concluded that Plaintiffs, as sophisticated investors, knew or reasonably should have known of the serious risks in investing in Delivery Agent, especially in light of the Going Concern Opinions, the Company's lack of profitability, and numerous rounds of financing. Appropriate due diligence would have revealed the purported valuation of Delivery Agent and Plaintiffs' securities as of the investment dates. Therefore, any loss suffered by Plaintiffs was reasonably foreseeable at the time of their investments given the numerous known risks associated with their investments.

4. Nothing in Plaintiffs' expert reports causes me to change the opinions in the Chookaszian Opening Report. My work in this matter is ongoing, and I reserve the right to supplement or modify my opinions to the extent new information comes to light subsequent to the filing of this report.

**III.    SUMMARY OF QUALIFICATIONS**

5. I have served in both management and board-level capacities in multiple companies, including private equity backed companies, and have developed an expertise in investments and their associated risks. My expertise is based on my study of the matters, my experience as a finance academic, and my practical experience investing in approximately 70 non-public companies over the past 30 years. I am currently an investor in approximately 20 non-public companies. Many of the companies I have invested in, including several of my current investments, are what I would call pre-IPO, and I have invested in them at times when they needed financing. These investments can be characterized as venture-stage investments. I have also been teaching the Corporate Governance course for the past 15 years at the University of Chicago Booth School of Business. The Corporate Governance course includes

topics on the governance processes of the board and members of management and also the principles of investing in private companies. I have also served on several informal private equity company advisory boards, as well as the following formal private equity company advisory boards:

- Genstar Capital
- Madison Dearborn Partners
- CIVC Venture Partners

6. Based on my experience in a multitude of situations, my study, and teaching experience, I believe that I am well-qualified to opine on and respond to Mr. Berwick's report and the conclusions that should have been drawn from the factors he uses to support his conclusions. These include Delivery Agents' Going Concern Opinions, lack of profitability, and numerous rounds of financing, what Plaintiffs should have learned from these factors as part of their due diligence and associated warnings of the investment being high-risk, as well as Plaintiffs' awareness of the assets and liabilities of Delivery Agent used by Mr. Berwick in any purported valuation of Delivery Agent.

### IV. PLAINTIFFS KNEW OR SHOULD HAVE KNOWN OF THE SERIOUS RISKS ASSOCIATED WITH THEIR INVESTMENTS IN DELIVERY AGENT AND ANY PURPORTED VALUATIONS.

7. Plaintiffs are sophisticated venture-stage investors who invested in Delivery Agent between 2014 and 2016.[5] Through their prior, extensive investing experience, Plaintiffs were aware of the various risks associated with investing, including those associated with a new technology.[6]

8. Abdo largely relied on Rising Tide, *i.e.* Dr. Hassanein, to do due diligence.[7] Prior to Abdo's first investment in Delivery Agent on June 18, 2014 and Rising Tide's first investment in Delivery Agent on August 25, 2014.[8] Rising Tide's representative, Dr. Hassanein, who was an expert on venture-stage due diligence,[9] had conducted extensive due diligence on Delivery Agent, dating at least as far back as 2009.[10]

9. The Berwick Report bases its valuation conclusion on, among other things, the fact that three separate and highly qualified auditors, KPMG, Deloitte, and Grant Thornton issued Going Concern Opinions on Delivery Agent for the years ending in 2011, 2012, 2013, 2014 and 2015.[11] A "going concern" opinion identifies companies that have a significant risk of being

---

[5] *See, e.g.,* Abdo Tr., August 28, 2019, at 42:4-11 (Abdo's representative testified that he is a sophisticated investor, with experience investing in a variety of different companies over the years, including young, technology companies.); Hassanein Tr., January 23, 2020, at 55:23-24 (Rising Tide's representative testified that he has invested in 68 companies in the past 5 years alone.); About Rising Tide, *available at* https://rtf.vc/about/, *accessed on* May 27, 2020 (Plaintiff Rising Tide is a venture capital firm who, over the last 35 years, has "help[ed] launch and expand startups in a variety of industries across three continents."). *See also* Abdo, Jr. Tr., September 13, 2019, at 37:4-38:20, 38:22-39:9, 40:1-12, 43:3-15, 44:13-25, 47:7-12, 51:4-52:3, 52:19-22, 59:1-19, 60:5-25 (Abdo's representative testified about his significant work experience in technology, including serving as the CEO of a software company, as well as communicating with officers and potential investors and creating Board presentations for technology companies).

[6] *See, e.g.,* Abdo Tr., August 28, 2019, at 42:12-19; Hassanein Tr., January 23, 2020, at 64:14-23.

[7] Abdo Tr., August 28, 2019, at 82:11-83:6.

[8] Abdo Compl., ¶ 38 and Rising Tide Compl., ¶ 36.

[9] *See, e.g.,* Hassanein Tr., January 23, 2020, at 18:22-19:15, 27:20-28:24, 55:23-24.

[10] RT0012257-2357 at 2257 and 2288 (Dep. Ex. 328); Hassanein Tr., January 23, 2020, at 94:9-15.

[11] Berwick Report, ¶¶ 21, 28-30. *See also* GT07531-7561 at GT07532; DT0000334-0360 at 0336; CONNEKT 0531044-1081 at 1047 (Dep. Ex. 440); GT01043-1090 at 1046 (Dep. Ex. 441); GT01094-1146 at 1097 (Dep. Ex. 442).

4

unable to meet their financial obligations over the following year. "Going concern" opinions are not common, because most companies are able to meet their obligations in the subsequent year. A "going concern" opinion is a very strong warning to the reader of the financial statements that a company is struggling financially, is at a material risk of financial failure and may not be able to remain in business. Based upon my experience as an investor in many non-public companies, a board member for numerous companies, and a professor on venture investing, an investor facing "going concern" opinions should increase their due diligence work and focus on a plan to survive the coming year and a detailed plan to get to an IPO. Moreover, investors in this situation are, no matter what plan there is to achieve these goals, on notice that they are investing in a high risk situation. When an auditor issues a "going concern" opinion, they are communicating to the reader of the financial statements, that they have substantial doubt about the viability of the firm and their ability to raise capital.

10. It is inconceivable to me that Plaintiffs, as experienced venture-stage investors and experts on due diligence, would have invested in Delivery Agent without having read these Going Concern Opinions that Mr. Berwick relies so heavily on for his conclusions. The first step in the due diligence process is reviewing audited financial statements and, then, creating a due diligence plan and scope based upon the content of these statements. As experienced investors, prior to investing in Delivery Agent, Plaintiffs would have been grossly negligent in their due diligence if they failed to review and consider carefully the financial statements[12] and been aware of the Going Concern Opinions and the importance of them. Any failure to

---

[12] Hassanein Tr., January 23, 2020, at 201:15-20. *See also* Hassanein Tr., January 23, 2020, at 202:11-22 (Dr. Hassanein testified that he discussed the Company's financials with the investment bankers prior to recommending Rising Tide invest.); Hassanein Tr., January 23, 2020, at 99:11-100:17 (Dr. Hassanein testified that performing due diligence prior to an investment includes reviewing audited financial statements); Abdo Tr., August 28, 2019, at 82:11-83:6 (Abdo testified that he relied largely on Rising Tide to conduct due diligence).

5

review the financial statements and accompanying Going Concern Opinions and to understand the meaning of the risk identified by the Going Concern Opinions demonstrates that Plaintiffs' due diligence did not come close to the appropriate standard of care. The repeated Going Concern Opinions should have put Plaintiffs on notice of the serious risks associated with investing in Delivery Agent, including the Company's inability to fulfill its financial obligations over the corresponding years, its valuation and, therefore, the difficulty of obtaining additional financing including and particularly through an IPO. The existence of five years in a row of Going Concern Opinions should have alerted Plaintiffs to the fact that completing an IPO in the following year would not be an easy task and that there was a substantial risk of being unable to arrange adequate financing.

11. Mr. Berwick's opinion is also based upon the fact that Delivery Agent "had never been profitable and had accumulated at least $146 million of losses."[13] Indeed, by the time of Plaintiffs' initial investments in June and August 2014, Delivery Agent was projecting continuing losses, including a projected EBITDA loss of over $13 million for 2014.[14] As an experienced investor, I generally will not invest in a company unless I believe it will reach profitability within 18 months. I have heard this referred to by venture investors as the "18 month path to profitability," and am aware of investors who will not invest in any company that does not have such a plan in place. In any case, when a company has a history of repeated losses from operations and a "going concern" opinion from its accountants, investors who are interested in such a situation must greatly expand their due diligence to understand whether a turnaround is a plausible. Even if they do come to that conclusion they should realize that such an investment is a very high risk bet they are making. Delivery Agent was never

---

[13] Berwick Report ¶ 21(b).
[14] CONNEKT 0654139.

6

profitable and was not predicted to be profitable in the year that Plaintiffs first invested (2014). Plaintiffs were either grossly negligent in their evaluation of the situation, or were well-aware of the fact that Delivery Agent was repeatedly unprofitable[15] and had major accounting firms question their ability to remain as a "going concern." As such, Plaintiffs had to know there was a significant risk of in investing in Delivery Agent.

12. Mr. Berwick's report accurately indicates that Plaintiffs did not invest until the Series F financing round.[16] This fact alone, evincing the number of financing rounds the company had previously engaged in, should have placed Plaintiffs on notice of Delivery Agent's valuation at the time and the serious risk of investing. Since around 2005, Delivery Agent had raised funds through issuing securities over time in a sequence designated by letters of the alphabet—starting with "Series A," then "Series B," then "Series C" etc., as well as other convertible note financings and bridge financings.[17] In my experience as an investor, if a company continues to need to raise money after a Series C round to meet its obligations, it signifies to investors that the business has not been profitable and typically has not achieved its projections. In my experience as an investor, I generally avoid any investments beyond a Series C round because I believe such companies have a low probability of success and therefore an elevated level of risk. Experienced investors who do invest in a later Series than the C round are aware of the risk in investing, since the company had a track record that shows

---

[15] *See, e.g.,* RT0002643-2681 at 2645 (Dep. Ex. 821); Hassanein Tr., January 23, 2020, at 255:25-256:22 (As of February 2014, Dr. Hassanein knew that Delivery Agent was "young, high growth and unprofitable," and included "lack of profitability" as a key risk area.). *See also* Hassanein Tr., January 24, 2020, at 406:12-16 (Dr. Hassanein testified that profitability is necessary for an IPO); Abdo Jr. Tr., September 13, 2019, at 114:17-23 (Abdo's representative testified that during the first business meeting about Delivery Agent, "I felt like there was nothing there…that I could see that would be a profitable business."); Abdo Tr., August 28, 2019, at 82:11-83:6 (Abdo testifying that he relied largely on Rising Tide to conduct due diligence).

[16] Berwick Report ¶ 18.

[17] Pohlen Tr., February 18, 2020, at 62:23-63:8; 72:22-73:5.

the initial rounds of financing had not brought it to profitability. Mr. Berwick should also be aware of this reality of venture investing. Plaintiffs' earliest investments here were during the Series F round.[18] That Plaintiffs invested in Series F and G rounds indicates that they understood these investments involved elevated risks. Any sophisticated investor would know this. Plaintiffs had thus received a warning notice of that high level of risk associated with their investment. Five prior securities financing rounds had not been successful in getting Delivery Agent to either profitability, an IPO, or to be acquired.

13. Plaintiffs were also provided with various deal protections for each of their investments.[19] Specifically, Plaintiffs were provided senior liquidation preferences,[20] which prioritized their distributions in the case of a liquidation event. Plaintiffs were also provided with a 2x multiplier preference in the case of an IPO, which meant that they would receive double their investment, and 1.5x multiplier preference in the case of a merger or acquisition, meaning they would receive 1.5 times their initial investment.[21] In my experience, such protections are made available to investors in later rounds when an investment opportunity has a high degree of risk. The liquidation preference provides the new investor with a priority to receive their investment back plus a significant return on their investment before any of the prior investors receive any return on their capital. An investment that did not have a high degree of risk would not require or offer these additional inducements to attract investors because these provisions are very punitive to the existing shareholders. In an IPO, for example, investors are not

---

[18] Rising Tide Compl., ¶ 36; Abdo Compl., ¶ 38.

[19] *See, e.g.,* RT0001166-1358 at 1205-1208; Abdo Tr., August 28, 2019, at 44:7-16; ABDO000001-0040 at 0001 (Dep. Ex. 325).

[20] *See, e.g.,* RT0001166-1358 at 1204; RT0009562-9716 at 9612-9613; LW00204695-4879 at 4835; ABDO000001-0040 at 0001 (Dep. Ex. 325); Hassanein Tr., January 23, 2020, at 123:2-9; Hassanein Tr., January 24, 2020, at 327:5-9.

[21] Hassanein Tr., January 23, 2020, at 124:6-15.

8

provided with such protections on their purchases of the IPO stock. The fact that Plaintiffs were provided with these investment protections is further evidence of their awareness of the significant risks associated with investing in Delivery Agent at the time of their investment and the Company's purported valuation. In addition to Mr. Berwick's conclusions, with respect to the Going Concern Opinions and profitability, which are based on information readily available to Plaintiffs in due diligence, these provisions make clear that Plaintiffs, as sophisticated investors, had to have known of Delivery Agent's value and that this was a very risky investment.

## V. CONCLUSION

14. In my opinion, Plaintiffs, as sophisticated investors with significant prior investing experience, were aware or should have been aware of the serious risks of investing in Delivery Agent, based just on each of the factors relied upon by Mr. Berwick, including Delivery Agent's lack of profitability, numerous funding rounds, and Going Concern Opinions, but, nevertheless, made a fully informed decision to proceed with their investments.

_____
Dennis Chookaszian

# Exhibit 1

## Materials Relied Upon by Dennis Chookaszian

1. *Abdo v. Fitzsimmons et. al.*, Case No. 3:17-cv-00851-EDL, Doc. No. 1.

2. *Abdo v. Fitzsimmons et. al.*, Case No. 3:17-cv-00851-EDL, Doc. No. 63

3. ABDO000001-0040 at 0001 (Deposition Exhibit 325)

4. About Rising Tide, *available at* https://rtf.vc/about/

5. BE0000287-0295 (Deposition Exhibit 915)

6. BMOCMC_015179

7. BMOCMC_016014

8. BMOCMC_013884

9. CONNEKT 0288834-8837

10. CONNEKT 0338661-8662

11. CONNEKT 0339061-9071

12. CONNEKT 0344980 (Deposition Exhibit 419)

13. CONNEKT 0464272

14. CONNEKT 0484978-4980 (Deposition Exhibit 886)

15. CONNEKT 0492401-2435

16. CONNEKT 0531044-1081 (Deposition Exhibit 440)

17. CONNEKT 0652694 (Deposition Exhibit 718)

18. CONNEKT 0654139-4193

19. David A. Nadler, *Building Better Boards*, Harvard Bus. Rev. (2004)

20. DB_DA_0002401-2413 (Deposition Exhibit 373)

21. DEF_027064-7065 (Deposition Exhibit 883)

22. Deloitte Touche Tohmatsu Limited, *Board effectiveness: A focus on behavior*, On the Board's Agenda U.S. (2016)

23. Dennis Chookaszian, Corporate Governance Framework - 16 Roles and Responsibilities, U. Chi. Booth Bus. Sch. (2020)

24. Dennis Chookaszian, *Corporate Governance Framework - 31 Legal Standards,* U. Chi. Booth Bus. Sch. (2020)

25. Dennis Chookaszian, *Corporate Governance Framework - 32 Sarbanes Oxley Sections 302 404 & 906,* U. Chi. Booth Bus. Sch. (2020)

26. Dennis Chookaszian, *Directors' Duties Presentation*, U. Chi. Booth Bus. Sch. (2020)

27. Dennis Chookaszian, *Duties of Directors Sarbanes Oxley Presentation*, U. Chi. Booth Bus. Sch. (2020)

28. Dennis Chookaszian, *Framework 24 Governance Principles – Public Companies,* U. Chi. Booth Bus. Sch. (2020)

29. Deposition Exhibit 1016

30. Deposition Transcript of Anuj Mathur

31. Deposition Transcript of Christian Borcher

32. Deposition Transcript of Christopher Power

33. Deposition Transcript of Daniel Bergeson

34. Deposition Transcript of James Peters

35. Deposition Transcript of Joseph Kell

36. Deposition Transcript of John Abdo

37. Deposition Transcript of John Abdo, Jr.

38. Deposition Transcript of Ossama Hassanein

39. Deposition Transcript of Peter Goettner

40. Deposition Transcript of Patrick Pohlen

41. Deposition Transcript of Soheil Badran

42. Deposition Transcript of Timothy Zingraf

43. Dominic Barton and Mark Wiseman, *Where Boards Fall Short*, Harvard Bus. Rev. (2015)

44. DT0000334-0361

45. Financial Reporting Council, *Culture report: Corporate Culture and the Role of Boards*, FRC (2014)

46. GT01043-1090 (Deposition Exhibit 441)

47. GT01094-1146 (Deposition Exhibit 442)

48. GT01735-1743 (Deposition Exhibit 57)

49. GT01799-1801 (Deposition Exhibit 424)

50. GT07531-7561

51. LW00204695-4879

52. LW00219952-9960 (Deposition Exhibit 890)

53. LW00222858-2861

54. LW00222295-2296 (Deposition Exhibit 1018)

55. LW00231314-1315

56. LW00231316-1317

57. LW00396865-6866

58. LW00534231-4233 (Deposition Exhibit 889)

59. LW00601474-1477

60. LW00607830 (Deposition Exhibit 1023)

61. LW00683644-3646

62. LW00683773-3776

63. Mary Graham Davis, *RX for a Successful Board: A Healthy Board Culture*, AGB (2014)

64. Conor Kehoe, Frithjof Lund, and Nina Spielmann, *Toward a value-creating board*, McKinsey & Company (2016), *available at* http://www.mckinsey.com/Bus.-functions/strategy-and-corporate-finance/our-insights/toward-a-value-creating-board

65. *Rising Tide v. Fitzsimmons et. al.*, Case No. 3:17-cv-01232-EDL, Doc. No. 1

66. *Rising Tide v. Fitzsimmons et. al.*, Case No. 3:17-cv-01232-EDL, Doc. No. 53

67. *Rising Tide v. Fitzsimmons et. al.*, Case No. 3:17-cv-01232-EDL, Doc. No. 57

68. *Rising Tide v. Fitzsimmons et. al.*, Case No. 3:17-cv-01232-EDL, Doc. No. 84

69. RT0001166-1358

70. RT0002643-2681 (Deposition Exhibit 821)

71. RT0006477-6512

72. RT0012257-2357 (Deposition Exhibit 328)

73. RT0043178-3179 (Deposition Exhibit 899)

74. RT0044683 (Deposition Exhibit 901)

75. RT0063906-3907 (Deposition Exhibit 900)

76. RT0009562-9716

77. Venture Capital and Emerging Companies The Legal 500, *available at* https://www.legal500.com/c/united-states/macorporate-and-commercial/venture-capital-and-emerging-companies/?edition=united-states/2019-edition